**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**MOUNTAIN VALLEY PIPELINE, LLC,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 5:23-cv-00625**

**MELINDA ANN TUHUS,**

**Defendant.**

**MOUNTAIN VALLEY PIPELINE, LLC,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 5:23-cv-00626**

**ROSE ZHENG ABRAMOFF,**

**Defendant.**

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ABSTENTION

Mountain Valley Pipeline ("MVP") responds in opposition to Melinda Tuhus' and Rose Abramoff's ("Defendants") Motion for Abstention ("Motion"), which asks for dismissal of the Complaint. Dismissal or remand based on abstention is improper not only because this is a case for damages, but also because no abstention doctrine applies to this case. Defendants' attempt to challenge diversity jurisdiction is similarly flawed as the Complaint on its face clearly establishes complete diversity and an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000).

## LEGAL STANDARD

Defendants' Motion is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) as Defendants specifically ask that the case be dismissed. *See* Compl. at 7. When considering a motion to dismiss,

a court will construe factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the Complaint's legal conclusions. *See Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The court may also "properly take judicial notice of public record." *Phillips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Finally, a court may "consider documents attached to the complaint, as well as those attached to the motion to dismiss so long as they are integral to the complaint and authentic." *Id.* (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 (4th Cir. 2006).

Defendants' Motion is based on the abstention doctrine, but "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 1720 (1996) (citations omitted). Namely, federal courts may decline to exercise jurisdiction only in "exceptional circumstances." *Id.* Further, "abstention is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976). Importantly, federal courts may use abstention in cases of equity, but may not dismiss or remand based on abstention in common law actions for damages. *Quackenbush* at Syl. Pt. 2.

In *Quackenbush*, the Insurance Commissioner was appointed trustee over an insurance company. *See id.* The Insurance Commissioner sued Allstate for contract and tort damages resulting from a breach of contract. *See id.* The Insurance Commissioner also sought a declaration of Allstate's obligations under the agreements. *See id.* Allstate removed the case to federal court on diversity grounds and filed a motion to compel arbitration. *See id.* The Commissioner sought remand to state court based on abstention. *See id.* In its analysis, the U.S. Supreme Court held that a case seeking damages is improper for dismissal or remand and, instead, jurisdiction should be retained by the federal court. *See id.* at 719–721. Because *Quackenbush* dealt with claims that

included claims for tort and contract damages, the U.S. Supreme Court found the District Court's remand of the case to be unwarranted. *See id*. at 731. Presented with a similar situation, the Southern District of West Virginia recently followed *Quackenbush* in *Employers' Innovative Network, LLC v. Bridgeport Benefits, Inc.*, No. 5:18-CV-01082, 2019 WL 539075, at *8 (S.D. W. Va. Feb. 11, 2019), where the complaint alleged several causes of action, including unauthorized practice of insurance, breach of fiduciary duty, slander, negligence, breach of contract, fraud in the inducement, fraud in the performance, and civil conspiracy. *See id.* at *1. Judge Berger, citing *Quackenbush*, held that the Plaintiff sought compensatory and punitive damages in its complaint and, therefore, dismissal or remand based on abstention was not appropriate. *See id.* at *8.

The *Quackenbush* holding bars dismissal based on any type of abstention relied upon by Defendants. Nevertheless, MVP will address each of the abstention doctrines to explain even in the face of *Quackenbush* the abstention argument fails.

## ARGUMENT

There are five abstention doctrines recognized federally: (1) *Younger* abstention; (2) *Pullman* abstention; (3) *Burford* abstention; (4) *Thibodaux* abstention; and (5) the *Rooker-Feldman* doctrine. *Pullman* abstention applies to avoid decision of a federal constitutional question when the case may be disposed of on issues of state law. *Younger* abstention leaves to states the resolution of unsettled questions of state law. *Burford* abstention avoids needless conflict with the administration by a state of its own affairs. *Thibodaux* abstention avoids duplicative litigation. The *Rooker-Feldman* doctrine is not technically an abstention doctrine but provides that federal courts lack jurisdiction to hear cases already fully decided in state courts. As explained below, each of these forms of abstention are inapplicable to the case at hand.

Defendants do not state what form of abstention upon which they rely, and MVP will, therefore, address each in turn. Irrespective of which type of abstention they may assert, Defendants' request cannot be granted because MVP has pled, among other counts, a common law claim for damages, and according to the applicable case law, dismissal or remand based on abstention is improper.

Defendants' challenge to the jurisdictional amount in controversy is without any factual support and similarly fails.

## I. *Younger* Abstention

### a. There are no parallel state court proceedings pending against Defendants.

Any potential reliance on *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971) is misplaced because there is no parallel state court proceeding by MVP against these Defendants, and therefore MVP is not seeking to circumvent any state court authority by pursuing its action in federal court. In *Younger*, Harris was indicted in California State Court and charged with violations of the California Penal Code. *See id.* As a result, Harris filed a Complaint in federal district court, seeking an injunction preventing Younger, the prosecutor, from prosecuting the case for violation of his First and Fourteenth Amendment rights. *See id.* The district court granted the injunction, triggering the appeal. *See id.* The U.S. Supreme Court held that, without some reason for equitable relief, there was no authority to enjoin enforcement of a statute solely on the basis that the statute, on its face, abridges First Amendment rights. *See id.* at 53.

Similarly, in *Lynch v. Snepp*, 472 F.2d 769 (4th Cir. 1973), the Fourth Circuit reviewed a district court's injunction based on the constitutionality of two orders issued by the North Carolina Superior Court. The Superior Court entered an injunction to control access to public schools by the public. Defendants then filed an action in federal court, requesting an injunction against the

state court's injunction. The Fourth Circuit found that the plaintiffs failed to show both irreparable injury and that their rights would not be protected in the state proceedings. *See id.* at 766. As a result, the Court reversed the grant of preliminary injunction. *See id.*

The facts and circumstances of *Younger* and *Lynch* are distinctly different from the facts at bar. Here, there is no parallel state court proceeding that MVP seeks to enjoin. MVP did not file its injunction in an attempt to circumvent a State Court ruling. MVP has asserted damage claims for trespass against these two Defendants and is seeking an injunction against them to prevent further trespasses and interference. There is no parallel state civil action against these Defendants. This case is also distinguishable from the case law cited by Defendants in that MVP is not seeking to enjoin the state prosecutor or any aspect of the criminal proceeding and is not seeking to enjoin any state court ruling. Any abstention based upon *Younger* simply is not applicable in this case.

This case is much more closely aligned with *Lewis v. Blackburn*, 734 F.2d 1000 (4th Cir. 1984), in which Lewis challenged in federal court a state decision not to reappoint her as a magistrate. Lewis brought her claim, for the first time, in federal court, and Blackburn challenged the suit under *Younger*. *See id.* The Fourth Circuit found that "because there is no currently pending proceeding that is capable of adjudicating Lewis's First Amendment claim, we hold that the principles of *Younger* do not apply." *Id.* at 1003 (citing *Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct 1209 (1974)).

In sum, *Younger* abstention is designed to prevent federal courts from stepping in to directly impose their will on state courts. This is not the case here. The fact that there are state court proceedings against different parties arising from the same incident is irrelevant. The damages and injunction sought here is to enjoin Defendants and their co-conspirators from further trespassing and seeking monetary damages for their actions interfering with MVP's lawful

operations. This Court, in considering damages or an injunction, would not in any way circumvent the authority of any West Virginia state court criminal proceedings, and there are no parallel state court civil proceedings pending against these two Defendants.

**b. Interpretation of the Critical Infrastructure Act does not preclude this Court's jurisdiction.**

Defendants further claim that the potential requirement for the court to interpret a state statute is sufficient grounds for abstention. This is unfounded. In its Complaint, MVP assert a claim for violation of W. Va. Code § 61-10-34 ("Code"). Specifically, MVP states that Defendants have willfully and knowingly trespassed on a critical infrastructure facility. *See* Compl. at ¶ 34. MVP quotes the Code to show that a natural gas transmission facility, as the one at issue here, is included in the definition of "critical infrastructure." Compl. at ¶ 37. Finally, the Act specifically creates civil liability for a party who violates the Code. *See* Compl. at ¶ 36. The intent of the legislature is clear and unambiguous. Because of this, there is no interpretation of the Code required. Rather, this is simply application—Defendants trespassed on a facility the legislature defined as "critical infrastructure" and are therefore subject to civil liability.

Further, Defendants' lack of authority for the proposition that the Court's interpretation of a state statute is sufficient grounds for abstention is telling. In fact, Defendants have carefully cherry picked from the *Lynch* case in an effort to avoid the Court's disregard for this argument. Defendants quote *Lynch*, seemingly arguing that the Fourth Circuit established some sort of first-in-time requirement to federal abstention; "Critically, the Fourth Circuit here recognized the longstanding principle that 'ordinarily the jurisdiction of a state court first obtained should not be interfered with by federal courts.'" Memorandum of Law in Support of Defendants' Motion for Abstention at 4. This is not the standard, and, in fact, the court further explained its reasoning only a few pages later:

> One of the factors deserving of consideration is expense in terms of both time and money in the prosecution simultaneously of proceedings in coordinate courts. This sort of expense has been urged as a reason for abandoning *Pullman*-type abstention-where a federal court abstains to await state court determination of a state law issue-even though no state court proceeding is pending.

*Lynch*, 472 F.2d at 774 (citing *Baggett v. Bullitt*, 377 U.S. 360, 378, 84 S. Ct. 1316 (1964)). The *Lynch* court found the first-in-time argument unpersuasive and, instead reasoned that it is unreasonable for a federal court to abstain from a case for fear of first interpreting a state statute when there is no case to interpret the statute pending. The Fourth Circuit, in relying on *Baggett*, found the argument for abstention unpersuasive because "[t]he abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law[.]" *Baggett*, 377 U.S. at 375, 84 S. Ct at 1324.

The notion that the potential for the application by this Court of a relatively new state statute requires the federal court to abstain ignores the applicable law and common ability of federal courts to apply state law when necessary. Federal courts are not required (or even encouraged) to abstain from hearing cases interpreting uncertainty in state law—that is the role of the court. The age of the statute makes no difference, and issues of statutory interpretation in diversity actions are common even where there may be a lack of guidance from the highest court of a state. And as previously noted, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. at 716, 116 S. Ct. at 1720 (citations omitted).

## II. *Pullman* Abstention

*Pullman* abstention attempts to curb federal courts from ruling on constitutional questions when a state court could resolve the issue. In *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643 (1941), the U.S. Supreme Court found that the district court should abstain from the case because an action in a state court would have resolved any constitutional issue. *Id.*

Pullman had a policy allowing for only a porter—and no conductor—on trains with only one sleeping car. *See id.* Porters were typically black, and conductors were typically white. *See id.* To prevent this, the Railroad Commission of Texas instituted a regulation disallowing sleeping cars that did not have a conductor. *See id.* Pullman sued, alleging this violated the Equal Protection, Due Process, and Commerce Clauses of the U.S. Constitution. *See id.* However, the ultimate question was whether the Railroad Commission had the authority to enact such a regulation. *See id.* If, the Court reasoned, Texas courts found there was no such authority, the constitutional claims would be moot. *See id.* For this reason, the Court remanded the case with instructions for the district court to stay the case pending a State Court's decision on the Railroad Commission's authority. *See id.*

This Court, in *Employers' Innovative Network, LLC v. Bridgeport Benefits, Inc.*, No. 5:18-CV-01082, 2019 WL 539075, at *8 (S.D. W. Va. Feb. 11, 2019), refused to abstain based on *Pullman* because no federal constitutional issues were raised. The Court further held that even if there were a federal constitutional issue, Plaintiff failed to show the state law in question was "unsettled." *Id.* Defendants' Motion should be denied for the same reason—*Pullman* abstention is simply not applicable to this case.

## III. *Burford* Abstention

Any potential abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943) is similarly inapplicable in this case. *Burford* abstention allows federal courts to dismiss cases concerning actions dealing with difficult questions of state law bearing on policy problems. *See id.* Such action is appropriate: 1) "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," 2) "where there have been presented difficult questions of state law bearing on policy problems of

substantial public import whose importance transcends the result in the case at bar," considering whether the "exercise of federal review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," and 3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Co. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814–16, 96 S. Ct. 1236, 1244–45 (1976). However, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush*, 517 U.S. at 728, 116 S. Ct. at 1727 (quotation omitted).

Here, MVP is merely seeking monetary damages for a trespass that has occurred and an order to prevent further interference and trespass by these Defendants. Defendants cannot meet any of the three *Burford* requirements. There is no federal constitutional issue and there is no difficult question of state law—West Virginia law regarding trespass and injunctions is well-settled. In *Burford*, abstention was appropriate to avoid interfering with the State's specific administrative appeal process and the policy for managing oil fields. *See Burford*, 319 U.S. at 315, 63 S. Ct. at 1098. Compare this to *Colorado River*, in which a request for a *Burford* abstention was denied because the Court found no question involving unsettled state law or infringement on state policymaking. *See Co. River*, 424 U.S. at 800, 96 S. Ct. at 1236.

This same analysis was recently applied by Judge Chambers in the Southern District of West Virginia. In *Living Lands, LLC v. Cline*, 591 F. Supp. 3d 79 (S.D. W. Va. 2022), the plaintiff sued the West Virginia Department of Environmental Protection ("WVDEP") alleging violations of the Clean Water Act by its reclamation activities on former coal mining facilities. *See id*. The WVDEP filed a motion to dismiss under several theories, including *Burford* abstention. *See id.*

Judge Chambers reasoned that the Plaintiff "asserts straightforward violations of federal law and of the West Virginia Solid Waste Management Act" and *Burford* abstention did not apply to such claims. *Id.* at 99.

Finally, this action is not an attempt to restrain state criminal proceedings. But for the commonality of underlying facts, the state criminal proceedings against these Defendants are wholly irrelevant to the instant civil litigation. In the criminal proceedings, MVP cannot be awarded civil damages, nor will the state criminal proceeding result in the issuance of a civil injunction. As such, there is no attempt by MVP to restrain criminal proceedings. Defendants cannot meet any of the three requirements outlined in the *Burford* abstention standard. Therefore, dismissal based on *Burford* abstention is improper.

**IV. *Thibodaux* Abstention**

*Thibodaux* abstention, although distinct from other forms, is very similar to *Burford*—it allows a federal court to abstain from a case concerning difficult issues important to the public. In *Colorado River*, the Court established the narrow distinction, holding *Thibodaux* involved a difficult legal question "whose importance transcends the result in the case then at bar," while *Burford* involved difficult questions "not of transcendent importance, but . . . would have had an impermissibly disruptive effect on state policy." *Colorado River*, 424 U.S. at 814–15, 96 S. Ct. at 1245.

In *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S. Ct. 1070 (1959), the U.S. Supreme Court dealt with an eminent domain proceeding in federal court based on diversity jurisdiction. The district court stayed the proceeding pending review of the Louisiana statute in question (allowing municipalities to condemn public utility property when in the public interest) by the Louisiana Supreme Court, but the Fifth Circuit Court of Appeals found this was

improper. The U.S. Supreme Court agreed with the District Court, reversing the Fifth Circuit and reinstating the stay, reasoning that the "mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction." *Id.* at 27 (citing *Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S. Ct. 7 (1943)). Instead, the Supreme Court limited this abstention to two specific scenarios: (1) issues that concern the relationship between cities and states, and (2) issues dealing with the scope of uninterpreted state statutes of questionable constitutionality. *See id.*

Here, there is no city/state relationship in question and the relevant statute has not been constitutionality challenged. The interaction between city and state is not at play here—this case concerns issues of trespass on private property and resultant damage caused by two individuals. Outside of arresting the defendants for criminal trespass, the local municipalities and state governments have not been involved.[1]

**V. *Rooker-Feldman* Doctrine**

Although not technically a form of abstention, the *Rooker-Feldman* doctrine is often associated with the other abstention doctrines. Defendants did not specifically plead this Doctrine, but MVP includes it for the Court's convenience—as one cannot determine which theory the Defendants rely upon. The *Rooker-Feldman* doctrine prevents federal review of state court decisions. "United States district courts have no jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Syl. Pt. 2, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct 1303 (1983). Specifically, the U.S. Supreme Court reserved the review of state court opinions for itself. *Id.* at 482, 1315.

[1] For further guidance, Judge Berger of the Southern District of West Virginia recently refused to abstain, based on *Thibodaux* abstention, from a case because dismissal or remand based on abstention is inapplicable to claims for damages. *Employers' Innovative Network*, 2019 WL 539075 at *8.

As explained above, there is no review of state court decisions here. In fact, there is no parallel state case for this Court to review. Instead, this is an action completely independent of state court proceedings. As such, the *Rooker-Feldman* doctrine does not apply.

**VI. Federal Diversity Jurisdiction is met in this case.**

Finally, without any factual support or citation, Defendants include a challenge to the jurisdictional amount in controversy. Defendants do not even identify how Defendants find MVP's pleading is insufficient, only emphasizing that the jurisdictional amount must be reached exclusive of interest and costs.

MVP specifically alleges in the Complaint "damage to MVP in salaries, wages, and other expenses incurred through delay of the project in the amount of at least $45,629.50"[2] and "punitive damages in compliance with W. Va. Code § 55-7-29 in excess of the jurisdictional amount in controversy."[3] The Complaint clearly states MVP is not relying alone on the delay damages incurred by the trespass and factoring its claim for interest and costs in deciding the amount in controversy. MVP alleged it has incurred at least $45,629.50 in compensatory damage as a direct result of the conduct of the Defendants. These delay damages are not, however, inclusive of internal overhead and costs associated with extending schedules and therefore have the potential to be greater. More importantly, MVP has asserted a claim for civil conspiracy for intentional, willful, and wanton conduct and asserted a claim for punitive damages. Accepting MVP's allegations as true at this stage, as this Court must when considering a motion to dismiss, MVP has asserted a claim for punitive damages under state law and pursuant to W. VA. CODE § 55-7-29, which entitles MVP to punitive damages four times the amount of compensatory damages or $500,000, whichever is greater. In calculating the amount in controversy, compensatory and

[2] Compl. at ¶ 38.
[3] Compl. at ¶ 53.

punitive damages are compiled. *See Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp 22, 24 (S.D. W. Va. 1994) ("[P]unitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action."); *White v. Newrez, LLC*, No. 2:21-CV-00444, 2022 WL 1920696, at *2 (S.D. W. Va. June 3, 2022). Defendants have been charged with criminal trespass and—as established in the exhibits to the Complaint—readily admit they intentionally conspired with others to intentionally interfere with and block construction of the MVP project. The allegations of the Complaint must be taken as true. It cannot be said to a legal certainty that MVP cannot recover punitive damages as a result of the admittedly intentional, tortious conduct by the Defendants. To the contrary, punitive damages are entirely appropriate for such conduct.

## CONCLUSION

MVP has filed a Complaint that squarely falls within the Court's jurisdiction, and there is nothing in the record to suggest otherwise. The case is not subject to dismissal for any reason, let alone abstention. Abstention, in any form, cannot stand because this case includes an action for damages—a basis upon which the U.S. Supreme Court has expressly denied dismissal or remand based on abstention. This principle was recently reinforced by Judge Berger in *Employers' Innovative Network, LLC*, *supra*. Defendants failed to identify the type of abstention upon which they rely. This is due, in large part, to the fact that abstention simply does not apply to the instant case.[4] Finally, the amount in controversy is clearly met and appropriately pleaded within the Complaint. Defendants' Motion should be denied.

[4] Given the indefiniteness of their Motion, if Defendants improperly assert in their reply a specific type of abstention upon which they rely with the basis therefore, MVP reserves the right to seek leave to file a sur-reply thereto. Similarly, if Defendants provide facts in a reply not included in their Motion supporting evidence suggesting it is a legal certainty that MVP cannot recover punitive damages, MVP reserves the right to seek leave to file a sur-reply thereto.

**MOUNTAIN VALLEY PIPELINE, LLC**

**By Counsel**

/s/ *Timothy M. Miller*
Timothy M. Miller (WVSB #2564)
Matthew S. Casto (WVSB #8174)
Robert M. Stonestreet (WVSB # 9370)
Jennifer J. Hicks (WVSB # 11423)
Austin D. Rogers (WVSB #13919)
Babst Calland, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
Telephone: 681.205.8888
Facsimile: 681.205.8814
tmiller@babstcalland.com
mcasto@babstcalland.com
rstonestreet@babstcalland.com
jhicks@babstcalland.com
arogers@babstcalland.com

**IN THE UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**MOUNTAIN VALLEY PIPELINE, LLC,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 5:23-cv-00625**

**MELINDA ANN TUHUS,**

**Defendant.**

**MOUNTAIN VALLEY PIPELINE, LLC,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 5:23-cv-00626**

**ROSE ZHENG ABRAMOFF,**

**Defendant.**

## CERTIFICATE OF SERVICE

The undersigned, as counsel for Plaintiff Mountain Valley Pipeline, LLC hereby certifies that a true and correct copy of the foregoing **Response to Defendants' Motion for Abstention** was filed this 16th day of October 2023, through this Court's CM/ECF system and that a copy was served on all parties.

William V. DePaulo, Esquire
860 Court Street North, Suite 300
Lewisburg, WV 24901
*Counsel for Defendants*

/s/ *Timothy M. Miller*
Timothy M. Miller (WVSB #2564)