IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MOUNTAIN VALLEY PIPELINE, LLC,

    Plaintiff,

v.                                           Civil Action No. 5:23-cv-00625
                                            (District Judge Frank W. Volk)

MELINDA ANN TUHUS and
ROSE ZHENG ABRAMOFF,

    Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION TO DISMISS COMPLAINT

In support of Defendant Melinda Ann Tuhus' Motion to Dismiss the Complaint[1] for Lack of Jurisdiction, Defendant, by Counsel, respectfully directs the Court's attention to the following points and authorities:

1.    For more than a decade now, the United States Supreme Court has imposed pleading requirements on pleading in federal courts. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 66, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court effectively discarded the long standing line of cases typified by *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957), which required an assessment of plaintiffs all allegations of fact under the so-called "no set of facts" test" which merely required a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[1] Civil Action No. 5:23-cv-00626 involving Rose Zheng Abramoff was merged with Civil Action No. 5:23-cv-00625 *sua sponte* by the Court on September 25, 2023.

2. As described by Justice Souter in *Twombly*, under the "no set of facts" test, a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery." 550 U.S. 561.

3. Over its 50-year reign the *Conley* test had accumulated much criticism. Justice Souter noted that when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 *Wright & Miller* § 1216, at 233-234. As expressed in *Twombly*, the "no set of facts," by 2007, had "earned its retirement." 550 U.S. 564.

4. In lieu of the liberal standard of *Conley*, *Twombly* requires that a pleading state "enough facts to state a claim to relief that is <u>plausible on its face</u>." 550 U.S. 570 (emphasis added). *Twombly* quoted favorably Judge Posner's comment in *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F. Supp. 2d 986, 995 (ND Ill. 2003), that "[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase". 550 U.S. 558.

5. *Iqbal* reaffirmed the holding of *Twombly* a mere two years later, noting that:

> Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555, 127 S.Ct. 1955. Second, determining whether a complaint states a plausible claim is context-specific, requiring the [556 U.S. 664] reviewing court to draw on its experience and common sense. Id., at 556.

### *First, The Plausibility Test.*

6. Paragraph 3 of MVP's complaint, states that this Court's jurisdiction is properly invoked under 28 U.S.C. §1332(a) because the parties are citizens of different states and because *because the action seeks damages in excess of $75,000.00.*

7. The allegation of "damages in excess of $75,000" fails because it is not even a formulaic recitation of the jurisdictional criteria of 28 U.S.C. §1332(a). Moreover, ¶3 provides no factual basis from which one can speculate, that damages – in any amount – let alone damages in excess of $75,000, exclusive of interest and costs, have been incurred.

8. Paragraph 3's allegation of damages in excess of $75,000 is not enhanced by the allegation in ¶32 that Defendant "has caused damage to MVP in salaries, wages, and other expenses incurred through delay of the project in the amount of **at least $45,629.50**." (emphasis added). Defendant acknowledges that $45,629.50 moves MVP's Complaint beyond zero and towards the jurisdictional minimum of $75,000 (exclusive of interests and costs); but a $29,371.63 deficit remains.

9. The costs of removing Defendant from Plaintiff's property cannot close the nearly $30,000 deficit in Plaintiff's claim for damages "in excess of $75,000" for the simple reason that those costs were incurred by the West Virginia State Police, not MVP, according to Plaintiff's allegations in ¶31.

10. Nor is ¶3's allegation of damages "in excess of $75,000" saved by the bare bones and conclusory references in ¶ 36 to a *statutory authority* to award Plaintiff "any damages to personal or real property while trespassing." To be sure, MVP does not even allege *any actual damages* to its "*personal or real property*" – the sole form of property protected by the so-called

Critical Infrastructure Act – *in any amount*, and certainly not with sufficient specificity or in an amount to push MVP over the hurdle of $75,000 exclusive of interest and costs.

11. Moreover, the allegations in ¶47 of the Complaint in 23-cv-00625 and the prayer for relief are classic bare bones pleadings, devoid of the statutory minimal allegation of damages, exclusive of interest and costs.

### *Second – The Experience And Common Sense Test*

12. Does the application of the Court's experience and common sense, even a lenient application, pull MVP's allegations out of the category of mere formulaic, bare bones and conclusory allegations, against which Twombly and Iqbal are aimed?

13. According to **Exhibit A** (the authenticity and accuracy of which Defendant does not stipulate to) attached to MVP's Complaint, six grandmothers -- armed with red parasols and folding chairs -- and describing themselves as "the Rocking Chair Rebellion," obstructed the construction of the Mountain Valley Pipeline for five hours by sitting on folding chairs and/or tying themselves to a drill. What is available in the form of "experience and common sense" to inform our assessment of the potential damage to MVP from this attack on fossil fuel infrastructure?

14. According to one item in **Exhibit A**, a prior disruption of MVP's construction -- by persons identified as the Yellow Finch – which lasted 932 days – cost MVP $213,000 in delays and security costs. Exhibit A, Document 1-1, page 11 of 14 PageID #19.

15. Applying tools commonly referred to as "multiplication" and "long division," this Court may take judicial notice of the fact that the last documented (by MVP) cost of delays and security ran at an hourly clip of $9.52 per hour (932 days X 24 hours = 22,368 total hours;

$213,000 divided by 22,368 = $9.52 per hour), which if extrapolated to the Rocking Chair Rebellion's five hour interruption generates potential damages of $47.61 ($9.52 X 5).

16. Added to ¶32's alleged (but by no means proved) damages of $45,629.50 in salaries, wages, and other expenses incurred through delay, the five-hour delay raised the total alleged damages to $45,677.11 ($45,629.50 plus $47.61), a dollar amount $29,322.89 short of the minimum jurisdictional damages allegation of $75,000, **_exclusive of interests and costs_**.

17. Pertinent to this assessment is *Twombly's* observation that "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," post at 573, at 951, given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. See, e.g., Easterbrook, Discovery as Abuse, 69 B. U. L. Rev. 635, 638 (1989)." *Twombly* at 1867.

18. It is further germane to note that the bare bones allegation in ¶25 of the Complaint seeking a permanent injunction, to the effect that Plaintiff MVP "has suffered irreparable injury," is, if not patently frivolous, surely inadequate in light of Twombly and Iqbal, both of which require something more than a simple invocation of the barest of pleading requirements.

19. Surely nothing in MVP's Complaint even approaches the danger to the plaintiff in *Federal Leasing, Inc. v Lloyds*, 650 F.2d 495 (4th Cir. 1981), where the Fourth Circuit upheld the District Court's holding that Federal probably would suffer irreparable injury if the preliminary injunction were denied:

> Contrary to Underwriters' assertion, Federal does not seek, and has not received, the mere acceleration of a money debt otherwise compensable in damages. It seeks to preserve its existence and its business. In a somewhat analogous situation a disputed franchise termination in which the record included hotly disputed allegations of fraud Judge Friendly commented: "(T)he right to continue a business is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award." Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197,

> 1205 (2d Cir. 1970). Even if Federal were to survive, the continuation of its present predicament endangers its relations with customers and investors, the good will built up by a heretofore successful enterprise; such damage is "incalculable not incalculably great or small, just incalculable." Blackwelder, 550 F.2d at 197.

650 F.2d 500.

19. Here, MVP will not even notice the loss of the currently alleged damages, still short of $75,000, let alone face any existential crisis. The MVP is owned by a joint venture formed among affiliates of each of Equitrans Midstream Corporation (47%); NextEra Energy, Inc.(31%); Consolidated Edison, Inc.(10%); AltaGas Ltd.(10%); and RGC Resources, Inc.(1%).

20. For the three months ended 3/31/24, Equitrans Midstream Corporation reported total revenues of $364 million and total operating income of $181 million. EXHIBIT "A". NextEra Energy, Inc reported total revenues of $5.7 billion for the same period, and total operating income of $3.7 billion. EXHIBIT "B". Consolidated Edison, Inc reported $4.2 billion and $3.2 billion, respectively, for total revenue and total operating income for the first quarter of 2024. EXHIBIT "C". AltaGas Ltd. reported revenue of 12.9 billion and normalized net income of $516 million EXHIBIT "D". RGC Resources, Inc. reported $33 million Total Revenue and $24 million Total Operating Income. EXHIBIT "E".

21. The cumulative loss to these investors, as alleged in the Complaint, is still less than $75,000.

22. MVP is not assisted by invocation of MVP v 6.56 Acres of Land, 915 F. 3d 197 (4th Cir. 2019). There the alleged financial damages were significant:

> form of irreparable injury found by the district courts: the significant and unrecoverable financial losses that Mountain Valley would sustain if access were delayed until November 2018, rather than granted immediately. To establish that injury, Mountain Valley presented evidence of three types of monetary harm: lost revenues from the delay in pipeline service, estimated at $40 to $50 million per month; charges and penalties for the breach of construction contracts, totaling $200

million; and carrying costs to prolong the project, such as storage and personnel expenses, for an additional $40 to $45 million.

915 F.3d 217.

23. But *MVP v 6.56* Acres turned on the fact that MVP's license at the FERC was at risk in that now five-year old case. Plainly, as a result of Congressional action, that clearly is no longer the case; there is in all candor no permit in the United States more secure than MVP's. The only question is whether the $45-odd thousand dollars of alleged damages constitute irreparable injury of the existential sort recognized n *Federal Leasing*. Defendants respectfully suggest that the appropriate answer is "no."

24. And MVP's case is not advanced by claims of delay, in this case some five hours. The reality is that on October 3, 2023, subsequent to the alleged delay caused by Defendants, MVP voluntarily entered into a Consent Order with the Pipeline and Hazardous Materials Safety Administration (EXHIBIT "F") which prescribes a Remedial Work Plan that will requires months, not hours, to complete.

25. In short, the incremental impact on MVP, financial and delay, if any, occasioned by six little old ladies brandishing red parasols on a back road in West Virginia, is – publicity aside – inconsequential under the relevant tests applicable in this litigation.

**WHEREFORE**, Defendant respectfully requests that this motion to dismiss be granted, that MVP's Complaint be dismissed under the tests of *Twombly* and *Iqbal*,[2] and that Defendant be awarded reasonable attorneys fees incurred in this matter.

---

[2] This Court retains authority to determined <u>sua sponte</u> whether MVP's failure in ¶3 to allege that "the matter in controversy exceeds the sum or value of $75,000"-- **_omitting an allegation relating to exclusion of interest and costs_** -- triggers the Court's duty to dismiss a case which, like Twombly and Iqbal, patently fails to allege matters sufficient to satisfy the jurisdictional requirements of 28 U.S.C. §1332(a).

Respectfully submitted,

                                             **MELINDA ANN THUSUS**

                                             By Counsel

_____
William V. DePaulo, Esq. #995
P. O. Box 1711
Lewisburg, WV 25901
Tel: 304-342-5588
Fax: 866-850-1501
william.depaulo@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MOUNTAIN VALLEY PIPELINE, LLC,

    Plaintiff,

v.                                                          Civil Action No. 5:23-cv-00625
                                                              (Judge Frank W. Volk)

MELINDA ANN TUHUS and
ROSE ZHENG ABRAMOFF,

    Defendant.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of the Court, this 14th day of May, 2024, and thereby served on Counsel for the Plaintiff as follows:

Timothy M. Miller, Esq.  #2564
Matthew S. Casto, Esq. #8174
Robert M. Stonestreet, Esq. #9370
Jennifer J. Hicks, Esq. #11423
Austin D. Rogers, Esq. #13919
BABST CALLAND, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
Tel: 681-205-8888
Fax: 681-205-8814
tmiller@babstcalland.com
mcasto@babstcalland.com
rstonestreet@babstcalland.com
jhicks@babstcalland.com
arogers@babstcalland.com

                                                                                 William V. DePaulo