UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MOUNTAIN VALLEY PIPELINE, LLC,

            Plaintiff,

v.                                    CIVIL ACTION NO 5:23-CV-00625

MELINDA ANN TUHUS, and
ROSE ZHENG ABRAMOFF

            Defendants.

## RESPONSE TO MOTION TO COMPEL

Defendants Melinda Ann Tuhus and Rose Zheng Abramoff by counsel, hereby respond to the Motion to Compel of Plaintiff Mountain Valley Pipeline, LLC ("MVP").

### Procedural History

Defendants generally agree with the procedural history set forth in MVP's Motion to Compel ("MTC") (Dkt. 48) at ¶¶ 1-13 and offer the following additions and/or corrections.

With respect to paragraph 2, as reflected in Exhibits A and B to MVP's MTC (Dkt. 48-1, Dkt. 48-2) and the Judgment Orders provided to MVP in discovery, Defendants have each pleaded guilty to a single count of trespass pursuant to W. Va. Code § 61-3B-3(a), with no factual basis stipulated by the Defendants or found by the court.

With respect to the timing of the meet-and-conferral, defense counsel responded to MVP's August 8, 2024 letter via email that day.  MVP permitted the defense to respond further by August 26 and the parties agreed to extend the Motion to Compel deadline accordingly.

With respect to paragraph 11, the defense authored the letter memorializing the parties' September 2 call. See Exhibit H to Motion to Compel (Dkt. 48-8).  This letter set forth the defense's offer to stipulate to the authenticity of a blog post as part of an informal resolution of the discovery dispute, as well as the defense's invitation that MVP make "additional suggestions . . . regarding

matters that may be stipulated to in lieu of a motion to compel." *Id.*, p. 2 [PDF p. 3]. MVP did not respond with any additional suggestions or requests for stipulations.

On September 14, defense counsel emailed counsel for MVP with another proposal for informal resolution to include the voluntary provision of limited additional discovery, and again invited MVP to make "other suggestions for informal resolution." MVP replied via email four days later, stating that MVP "need[s] more than this" and confirming MVP's intention to file a motion to compel without requesting any additional stipulations or offering a proposal for informal resolution. *See* Exhibit A (September 2-18 Email Exchange Between Counsel).

## Argument

### I.    Defendants properly invoke their Fifth Amendment privileges.

Defendants have not waived their Fifth Amendment rights in this proceeding by pleading guilty to a single count of trespass. Defendants face possible future prosecution related to events at issue in this litigation and retain their Fifth Amendment rights with respect to any discovery request that may furnish a link in the chain of evidence related to any such potential prosecution.

### A. The Fifth Amendment may be asserted in response to a discovery request unless it is perfectly clear that the answer could not possibly have a tendency to incriminate.

In *Marfork Coal Co., Inc., v. Smith*, 274 F.R.D. 193, 197 (S.D. W. Va. 2011), Judge VanDervort outlined key cases and principles of Fifth Amendment analysis relevant here:

> [T]he Fifth Amendment may be asserted in responses to a deposition question in a civil case when the answer to the question might incriminate the deponent in a future criminal proceeding. . . . The privilege "does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 499, 461, 95 S. Ct. 584, 592, 42 L. Ed. 2d 574 (1975). The mere assertion of the privilege against self-incrimination in response to questioning does not *ipso facto* prohibit the questioning. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818, 95 L. Ed. 1118 (1951) [quotation omitted]; *United States v. Sharp*, 920 F. 2d 1167 1170 (4th Cir. 1990). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling

2

> or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S. Ct. 697, 705, 19 L. Ed. 2d 889 (1968). **"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."** *Hoffman v. United States*, 341 U.S. at 486-487, 71 S. Ct. at 818. The incriminating potential may be facially or contextually evident. *United States v. Sharp*, 920 F. 2d at 1170. **"[T]he reasonableness of the claimed apprehension should simply be assumed once incriminating potential is found, unless there are genuine questions about the government's legal ability to prosecute. That is to say, once incriminating potential is found to exist, courts should not engage in raw speculation as to whether the government will actually prosecute."** *Id.*, at p. 1171.

274 F.R.D. at 206 (emphasis added). As in the instant case, the *Marfork* plaintiff sued environmental protesters for trespass, tortious interference, and civil conspiracy. The coal company sought to compel testimony regarding the defendant's her association with other alleged co-conspirators. Notwithstanding the defendant's prior guilty plea to criminal trespass, Judge VanDervort sustained her assertion of the Fifth Amendment privilege, given the possibility of further prosecution (in that case, criminal contempt) related to the trespass for which the defendant had pleaded guilty. *Id.* at 199-200, 207. *See also, e.g., Convertino v. U.S. Dept. of Justice*, 795 F. 3d 587, 595-96 (6th Cir. 2015) (internal quotations omitted) (courts "must sustain the privilege where they can by the use of reasonable inference or judicial imagination, conceive a sound basis for the claim").

In short, Ms. Tuhus and Dr. Abramoff are entitled to assert the Fifth Amendment privilege to any discovery request which might "furnish a link in the chain of evidence" that could be used for prosecutorial purposes. *See, e.g., United States v. Estep*, No. 23-4218, No. 23-4298, 2024 WL 2815149, at *1 (4th Cir. June 3, 2024) (unreported) (quoting *Hoffman*, 341 U.S. at 486). Defendants' assertion of the privilege must be sustained as "proper unless it is 'perfectly clear, from a careful consideration of all the circumstances in the case, that [they] are mistaken' and [their] answers could not 'possibly have' a 'tendency to incriminate.'" *Estep*, No. 23-4218, No. 23-4298, 2024 WL 2815149, at *1 (quoting *Hoffman*, 341 U.S. at 488) (cleaned up).

B. <u>Defendants have not waived their Fifth Amendment rights with respect to criminal charges that may still be brought against them.</u>

Relying solely on *McCarthy v. United States*, 394 U.S. 459 (1969), MVP suggests that Ms. Tuhus and Dr. Abramoff have wholesale waived their Fifth Amendment rights in this litigation as a result of their guilty pleas to a single count of trespass pursuant to W. Va. Code § 61-3B-3(a). MVP is incorrect, for several reasons. First, *McCarthy* held "that a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." 394 U.S. at 463-64. *McCarthy*'s discussion of the Fifth Amendment amounts to the single sentence quoted by MVP in its Motion. While a defendant who pleads guilty can be said to have "waived" the Fifth Amendment privilege to the extent that pleading guilty is itself a form of self-incrimination, the *McCarthy dicta* says nothing about the extent of such a waiver or its applicability to subsequent proceedings.

Second, subsequent to *McCarthy* and the related case of *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)[1], the Supreme Court squarely rejected the argument that a "guilty plea [is] a waiver of the privilege against compelled self-incrimination with respect to all the crimes comprehended in the plea." *Mitchell v. United States*, 526 U.S. 314, 325 (1999). *Mitchell* explicitly refutes the assertion that Fed. R. Crim. P. 11 contemplates a "broad waiver" of the Fifth Amendment privilege and notes that the purpose of Rule 11 "is to inform the defendant of what she loses by foregoing the trial, *not to elicit a waiver of the privilege for proceedings still to follow*." *Id.* at 323-24 (emphasis added). See *also United States v. Stewart*, 129 Fed. Appx. 758, 767 (4th Cir. 2005) ("the mere fact that [the witness] had pled guilty did not mean that he no longer possessed a valid fear of further incriminating himself"); *United States v. Gonzales*, 29 Fed. Appx. 165, 167 (4th Cir. 2002) (recognizing that *Mitchell* "held that a guilty

---

[1] Like *McCarthy*, *Boykin* includes a single sentence referencing Fifth Amendment waiver associated with a guilty plea without clarifying the extent of the waiver.

4

plea does not waive the right against self-incrimination"). MVP's broad extrapolations from *McCarthy* cannot be reconciled with *Mitchell*'s holding that a guilty plea does not even waive the Fifth Amendment privilege as to all crimes in the plea, let alone others. 526 U.S. at 321.

Third, Defendants' plea agreements confirm they have not broadly waived their Fifth Amendment privileges. Defendants' plea agreements reflect no such waiver beyond the right to trial; they merely informed Defendants that "*[a]t trial,*" they would have "the right not to be forced to incriminate" themselves" and the right "to be silent." *See* Exhibit A to Motion to Compel, (Dkt 48-1), p. 3 and Exhibit B (Dkt. 48-2), p. 3 (paragraph 4 of plea agreements) (emphasis added). But here, as in *Mitchell*, "there was to be no trial" and thus "the warning would not have brought home to [Defendants] that [they were] also waiving the right the right to self-incrimination" at any other proceeding. 526 U.S. at 323-24. Likewise, the acknowledgment in Defendants' plea agreement that the magistrate court could have questioned them "about the offense(s) to which I plead" – i.e., trespass – does not amount to a waiver of their Fifth Amendment privileges. *See* Exhibits A and B to Motion to Compel, p. 3 (paragraph 6 of plea agreements); *Mitchell*, 526 U.S. at 324 (recognizing that a defendant who invokes the Fifth Amendment during a plea colloquy "runs the risk the district court will find the factual basis inadequate" while maintaining that a statement made during a plea colloquy "is not necessarily a waiver of the privilege against self-incrimination").

Fourth, while the facts of *Mitchell* involved a defendant's invocation of her Fifth Amendment right at sentencing after a guilty plea, as numerous courts have recognized:

> [T]he Fifth Amendment privilege is not lost after a witness has pleaded guilty if the witness is still subject to a realistic risk of incrimination on other charges, or if the desired testimony about the transaction in question would give rise to a risk of incrimination in connection with other transactions.

*Baumer v. Schmidt*, 423 F. Supp. 393, 402-03 (E.D. Mich. 2019) (internal quotations omitted). *See also, e.g.*, *Marfork*, 273 F.R.D. at 207 (trespass pleas did not "waive[ ] [defendants'] Fifth Amendment right with respect to other charges which could be lodged against them").

In short, Dr. Abramoff and Ms. Tuhus have waived their Fifth Amendment rights, if at all, only for the limited purpose of a potential plea colloquy in Summers County Magistrate Court regarding trespass, and retain their Fifth Amendments rights as to all other proceedings.

C. <u>Defendants properly assert their Fifth Amendment privileges in response to discovery requests designed to elicit evidence of conspiracy, which could furnish links in the chain of evidence that may be used in state or federal prosecutions.</u>

The possibility of criminal conspiracy charges that may be brought against Dr. Abramoff and Ms. Tuhus looms large in the Fifth Amendment analysis. In MVP's letters to counsel (<u>Exhibit E</u> and <u>Exhibit F</u> to <u>Motion to Compel</u> (Dkt. 48-5) and Dkt. 48-6)), with respect to nearly every disputed Interrogatory, MVP asserts that its requests are relevant to the conspiracy alleged – i.e., a conspiracy "with other persons and/or organizations in an attempt to prevent MVP from lawful use of its property." *See* <u>Compl.</u> (Dkt. 1), ¶ 42. Facing potential conspiracy charges, a witness may assert the Fifth Amendment to questions regarding their associations. *See Convertino*, 795 F. 3d at 593 (quoting *Emspak v. United States*, 349 U.S. 190, 199, 75 S. Ct. 687 (1955)) (collecting authorities wherein the Supreme Court and Sixth Circuit "sustain[ed] invocation of the Fifth Amendment privilege in response to questions regarding the individual's personal or professional associations 'when asked in a setting of possible incrimination'"). To the extent MVP's requests are calculated to discover admissible evidence of conspiracy, they also may "furnish a link in the chain of evidence" that could be used in a criminal conspiracy proceeding. *See Estep*, 2024 WL 2815149, at *1.

As detailed below, there is a possibility of future prosecutions against Defendants under both state and federal law. Defendants' assertion of the Fifth Amendment is therefore proper.[2]

---

[2] Defendants are in the unenviable position of having to furnish legal theories by which they may be prosecuted to a political adversary in order to justify their exercise of their Fifth Amendment privilege. Defendants therefore do not exhaustively present the Court all possible charges they may face, but respectfully seek an opportunity to inform the Court of additional potential bases for prosecution, preferably *ex parte*, should the Court not find the charges listed below sufficient to

i. *Defendants face the possibility of prosecution under federal law.*

It is not difficult to conclude, through the use of "reasonable inference or judicial imagination," that a person accused of interstate travel in furtherance of a conspiracy to obstruct a federally permitted pipeline project, and taking part in a protest at a pipeline construction site alleged to have been damaged as a result of the protest, has a "sound basis" for fearing liability under one or more provisions of the federal criminal code. *See Convertino*, 795 F. 3d at 595-96.

MVP ignores the possibility of federal prosecution entirely.[3] Among other charges that might be brought against Defendants, *see* 18 U.S.C. § 245(b)(1)(B) (criminalizing interference or attempted interference, by force or threat of force[4], with any person who is "participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States"). *See also* 18 U.S.C. § 371 (criminalizing conspiracy of two or more persons to commit an offense against the United States). Counsel is not aware of any case law that would preclude a § 245(b)(1)(B) prosecution of Defendants under the theory that they interfered with participation in an interstate pipeline construction project administered by the United States. At least

---

sustain their exercise of the privilege. *See* Section I(C)(iii) *infra* (collecting authorities regarding the proprietary of *ex parte* proffers in evaluating assertions of the Fifth Amendment privilege).

[3] The statute of limitations for non-capital federal offenses is five years. 18 U.S.C. § 3282(a). Further, the Double Jeopardy Clause does not preclude multiple prosecutions for the same conduct under the laws of separate sovereigns. *See, e.g., Gamble v. United States*, 587 U.S. (2019); *Eyck v. Lee*, No. 19CV6924MKWVWL, 2020 WL 8671942, at *13 (S.D.N.Y. Oct. 9, 2020), *report and recommendation adopted*, No. 19CV6924MKVRWL, 2023 WL 5917564 (S.D.N.Y. Sept. 11, 2023) (recognizing potential federal prosecution for conduct that was the subject of a state conviction as basis for assertion of the Fifth Amendment privilege).

[4] Counsel has found no controlling authority construing the "force or threat of force" element in the context of § 245 that would preclude a prosecution based on the conduct alleged here. *See Johnson v. Mississippi*, 421 U.S. 213, 227 (1975) (holding that "a state prosecution . . . cannot be characterized as an application of 'force or threat of force' within the meaning of s 245" without defining the outer limits of what constitutes "force or threat of force" under the statute).

one district court decision suggests that Defendants could be prosecuted under such a theory. *See United States v. Griffin*, 585 F. Supp. 1439, 1446 (M.D.N.C. 1983) (noting the "broad coverage" of the statute and suggesting that the permitting and monitoring of an activity by a governmental entity may establish that the activity is "administered" by the government).[5]

ii. *Defendants face the possibility of prosecution under West Virginia law.*[6]

W. Va. Code § 61-6-24 (d) renders it a felony offense to "use[ ] a . . . device with the specific intent to commit a terrorist act[.]" A "[t]errorist act" encompasses an act that is both 1) "[l]ikely to result in . . . damage to property" and 2) "[i]ntended to . . . [i]nfluence the policy" or "[a]ffect the conduct of a branch or level of government by intimidation or coercion[.]" *See* W. Va. Code § 61-6-24(a)(3)(A), (B)(ii)-(iii). *See also* W. Va. Code § 16-10-31 (criminalizing conspiracy of two or more persons to commit an offense against the State of West Virginia).

In response to Ms. Tuhus' discovery request for documents pertaining to conspiracy, MVP responded that "chain link fence/barbed wire were cut[.]" Further, MVP has denied that no damage Ms. Tuhus caused to MVP was damage to property. Defendants could be prosecuted either for violating or conspiring to violate § 61-6-24 – for example, under a theory that they used or conspired to use a device with the specific intent to commit a "terrorist act" (i.e., damaging the fence/wire) with intent to influence state policy by intimidation or coercion.[7]

---

[5] Although *Griffin* addresses 18 U.S.C. § 245(b)(2)(B), the operative language it interprets is identical to the relevant language in 18 U.S.C. § 245(b)(1)(B).

[6] Except for perjury, there is no statute of limitations for felony charges in West Virginia.

[7] Defendants' assertion of the Fifth Amendment does not amount to a concession of the veracity of any allegations. *See, e.g., Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (internal quotations omitted) (emphasis in original) ("[W]e have never held . . . that the privilege is unavailable to those who claim innocence. . . . [O]ne of the Fifth Amendment's basic functions . . . is to protect *innocent* [wo]men . . .who otherwise might be ensnared by ambiguous circumstances.").

Counsel is not aware of any case law that would precluding a § 61-6-24(d) prosecution under this theory. To the extent the Court doubts that a prosecution for "threats of terrorist acts" could plausibly be lodged against the acts of protest at issue here, it is notable that in 2019, prosecutors in the Thirty-First Judicial Circuit *actually brought* prosecutions under § 61-6-24(b) against other pipeline protesters (who were not accused of property damage) represented by undersigned local counsel. *See, e.g.*, Monroe County Circuit Court Case No. CC-32-2019-B-17. Although all such charges were ultimately dismissed, the actions of local prosecutors in other MVP protest cases underscore the validity of Defendants' Fifth Amendment assertions.[8]

        iii.    *Defendants face the possibility of prosecution under the law(s) of (an)other state(s) and request leave to make an* ex parte *proffer to the Court explaining the basis for this assertion if necessary.*

There are additional factual bases unknown to MVP upon which Defendants ground their assertion of the Fifth Amendment privilege. If this Court is not otherwise convinced that Defendants' Fifth Amendment assertions are legitimate, Defendants respectfully request that this Court permit Defendants to make an informal *ex parte* proffer, set an *ex parte* hearing for which the

---

[8] In his August 26 conferral letter to MVP, undersigned visiting counsel mistakenly suggested that neither Defendant had previously been charged with an offense related to property damage. This is incorrect with respect to Dr. Abramoff and counsel apologizes for this error.

In support of its Motion to Compel, MVP makes a similar mistake by suggesting to the Court that Ms. Tuhus has been charged with unlawful injury to or destruction of property. *See* Exhibit B to this pleading (Criminal Complaint against Ms. Tuhus and attached documentation provided by MVP in discovery); Exhibit C to this pleading (printout from Magistrate Court Record Search listing charges against Ms. Tuhus) (accessed October 4, 2024 at https://mcrsearch.courtswv.gov/).

With respect to Dr. Abramoff, she has not been charged with an offense under W. Va. Code § 61-6-24. W. Va. Code § 61-3-30(a) (the property damage charge dismissed pursuant to her plea agreement) and W. Va. Code § 61-6-24(b) and (d) (as well as conspiracy to violate said statutes) each have different elements. As such, Double Jeopardy does not bar Ms. Abramoff's prosecution under § 61-6-24. *See, e.g., Blockburger v. United States*, 284 U.S. 299, 303 (1932).

Additionally, Dr. Abramoff and Ms. Tuhus still face any charges relating to the alleged property damage which might be brought under federal law.

9

record shall be sealed, and/or grant Defendants leave to file a supplemental memorandum and/or affidavit *ex parte* and under seal, allowing Defendants to explain the factual bases supporting a reasonable possibility of prosecution by (a) state(s) other than West Virginia.

If a witness asserting the Fifth Amendment "were required to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486. Thus, "[w]hen the incriminatory potential of a discovery request is not clear on its face, an *in camera* conference" is appropriate. *Estate of Fisher v. CIR*, 905 F. 2d 645, (2d Cir. 1990). Accordingly, the Fourth Circuit has approved *in camera* proceedings to evaluate assertions of the Fifth Amendment and other privileges. *See, e.g., United States v. Wujkowski*, 929 F. 2d 981, 984 (4th Cir. 1991) (approving *in camera* review to assess Fifth Amendment claim); *United States v. Bornstein*, 977 F. 2d 112, 117 (4th Cir. 1992) (approving *in camera* proffers to assess attorney-client privilege claim). Other courts have also approved *ex parte* hearings and submissions to assess the validity of Fifth Amendment assertions. *See, e.g., United States v. Kaneshiro*, No. 1:22-cr-00048-TMB-NC, 2024 WL 1885684, *4 (D. Haw. Apr. 29, 2024) (ordering *ex parte* hearing prior to testimony to determine validity of Fifth Amendment privilege); *Convertino v. U.S. Dept. of Justice*, 795 F. 3d at 595 ("where no basis for invoking [the] Fifth Amendment privilege can be postulated in light of the setting and context of the case, a witness should be given the opportunity to support a claim of privilege through appropriately protected submissions or proceedings").

"[C]ourts must not abuse their authority by needlessly requesting" *in camera* submissions or proceedings. *Convertinto*, 795 F. 3d at 595. An *in camera* proceeding is unnecessary where a court can, "by the use of reasonable inference or judicial imagination, conceive a sound basis" to support a Fifth Amendment claim without an additional *in camera* showing. *Id.* (internal quotations omitted). If this Court finds it cannot directly sustain Defendants' Fifth Amendment assertions based on this

briefing, Defendants request the opportunity to make an *ex parte* showing of the factual basis for

potential prosecution by (a) state(s) other than West Virginia.

## II.    Defendants properly invoke their First Amendment privileges.

> The First Amendment . . . establishes the right to associate with others and organize
> in protest of the policies and programs of the Government. **It therefore applies in
> the context of discovery as a qualified privilege against disclosure of
> information when the party asserting the privilege demonstrates that the
> disclosure would likely impair the associational activities of the group.**

*Marfork Coal Co.*, 274 F.R.D. at 205 (emphasis added).

A.    Compelled disclosure of the associational information sought by MVP would have a
chilling effect on First Amendment-protected associational activities.

MVP views First Amendment-protected speech and associational activities of its political

opponents as tortious, and even criminal, in nature. MVP's own words and requests reveal a broad

view of what constitutes "perpetuating" the "crimes" at issue in this litigation. *See* Compl. (Dkt. 1),

p. 7 (seeking to enjoin Defendant from "encouraging . . . others from engaging in any act or activity

from which they are prohibited" [including acts of nonviolent civil disobedience]); Exhibit E and

Exhibit F to MTC (Dkt. 48-5, Dkt. 48-6), p. 6 [PDF p. 7] (characterizing "Defendants' pervasive use

of social media" as "perpetuating the crimes in question").

This activity, which MVP seeks to enjoin and impugn, is wholly protected by the First

Amendment. *See, e.g., Marfork Coal Co.*, 274 F.R.D. at 205 ("Peaceful speech, even speech that urges

civil disobedience, is fully protected by the First Amendment."); *Counterman v. Colorado*, 600 U.S. 66,

76 (2023) (*citing Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969)) (the "mere advocacy" of illegal activity

is "a kind of speech falling within the First Amendment's core.").

MVP's Motion to Compel makes clear exactly how and why the discovery requests in this

case could chill First Amendment-protected activity. At page 14 of its motion, MVP writes:

> Appalachians Against Pipelines have shown particular support for the September 7
> incident identified in the Complaint. As such, MVP is entitled to know who, if anyone,
> Defendants are aware of that are associated with Appalachians Against Pipelines. This

> is directly relevant to show the network of conspirators involved in Defendant's
> trespass. . . . MVP is seeking information about the entity operating the Appalachians
> Against Pipelines Facebook page.

Being "associated with" an environmental protest movement generally, or the operators of a

Facebook page that supports civil disobedience specifically, does not make one part of a "network

of conspirators[.]" Nor does posting on the internet to support civil disobedience. MVP's

suggestion to the contrary does violence to the First Amendment.

Given this context, as in *Marfork Coal Co.*, "[i]t is evident that disclosure of [much of] the

information which [MVP] seeks" – and particularly information regarding Defendants associations –

"may have a chilling effect upon the . . . associational activities" of individuals and groups that would

otherwise engage in First Amendment protected advocacy, giving rise to a valid First Amendment

objection. *Marfork Coal Co.*, 274 F.R.D. at 204-06. The knowledge that mere association with

individuals or movements involved in environmental civil disobedience (or promoting civil

disobedience online) could enmesh one into the net of MVP's civil discovery fishing expedition

would have a deterrent effect on lawful association. *See id. See also, e.g., Americans for Prosperity

Foundation v. Bonta*, 594 U.S. 595, 618-19 (2021):

> When it comes to the freedom of association, the protections of the First
> Amendment are triggered not only by actual restrictions on an individual's ability to
> join with others to further shared goals. The risk of a chilling effect on association is
> enough, "[b]ecause First Amendment freedoms need breathing space to survive."
> [*NAACP v. Button*, 371 U.S. 415, 433 (1963)].

B.  The balancing test for compelled disclosure of the associational information sought by
    MVP does not favor disclosure here.

MVP's brief sets forth the balancing test to be applied in this case. *See* Motion to Compel, p.

5 (quoting *Marfork Coal Co.*, 274 F.R.D. at 205 (internal quotations omitted). With respect to the

relevance of the information and the necessity of receiving the information sought (the first and

second factors), while the requests are generally relevant to the *subject matter* of the litigation, the

necessity of the information sought by MVP to litigate the *actual claims and defenses* at issue here is

minimal. *See Marfork Coal Co.*, 274 F.R.D. at 203-04 (analyzing relevancy of the analogous discovery sought in that matter by distinguishing between relevancy to subject matter vs. relevancy to claims and defenses). While "information about other[s] . . . who participated with or assisted Defendants" in the September 7 incident might assist MVP in developing claims against new defendants, "the information has no substantive bearing upon Plaintiff's claims or Defendants' defense." *Id.* at 204.

The requested discovery is not necessary to MVP's ability to litigate the claims in this case. *See id.* Defendants have unconditionally offered to stipulate that it may be deemed established for the purposes of this litigation that Defendants are present in various pictures, included in Exhibit A to MVP's Complaints. *See* Exhibit H to Motion to Compel, p. 6 [PDF p. 7]. For whatever reason, however, MVP has declined Defendants' offer to so stipulate. Similarly, MVP has thus far rejected defense efforts to resolve the discovery disputes by stipulating to the authenticity and authorship of a blog post that could easily be used to make its case for the alleged conspiracy (*see id.*, p. 2) and providing MVP with additional discovery including all social media posts by Defendants discussing the September 7 incident (*see* Exhibit A to this Response). With respect to the intentions of Defendants, MVP should have no trouble making its case based on circumstantial evidence, the written materials referenced above, and the records (approximately sixty-eight pages of documents related to other protest incidents) provided by Defendants in their supplemental disclosures. Further, Defendants have extended several invitations to MVP – two in writing – to propose stipulations or suggestions for an agreement to resolve the outstanding discovery issues without court action. *See* Exhibit H to Motion to Compel, p. 2 [PDF p. 3]; Exhibit A to this Response.

Ultimately, MVP is already in possession of at least the lion's share of the information, if not everything, that it needs to attempt to prove its case. MVP's actions clarify that it is more interested in subjecting Defendants to a discovery process that compromises their associational interests than obtaining reasonable stipulations that would narrow the issues of dispute and assist MVP's ability to

13

advance its claims. But MVP's preference for an invasive discovery process does not render such a process necessary, particularly in light of Defendants' open offer to reach reasonable stipulations. This Court should sustain Defendants' First Amendment objections.

### III.    Interrogatories[9]

Interrogatory No. 1 – Please identify all persons with discoverable information about any other entries and state the substance of information possessed by each such person.

*Fifth Amendment* – *See* MTC Memo, pp. 7-8 (MVP expects the Interrogatory would result in disclosure regarding other individuals who assisted Defendants in relation to the events at issue).

*First Amendment* – The nature of the information requested strikes at the heart of the First Amendment associational privilege, seeking compelled identification of individuals who have knowledge of protests involving nonviolent civil disobedience.

Moreover, the information requested is unnecessary to MVP's case and cumulative given the other information available to MVP via law enforcement, MVP's contractors (pipeline workers and security personnel), as well as social media and other public postings such as those in Exhibit A to MVP's Complaints.[10]

*Other considerations* –To the extent this request seeks information related to incidents other than the September 7 incident alleged in the Complaint, the information sought is relevant to the subject matter of the litigation rather than the claims and defenses directly at issue here.

Interrogatory No. 2 – Please identify the addresses and the owners of all residences you have had, or in which you have stayed overnight for more than three consecutive nights, since September 1, 2023, and the periods of time that you resided or stayed there.

---

[9] With respect to the Fifth Amendment, below each discovery request listed, Defendants offer brief explanations or references to quotations or arguments from MVP that non-exhaustively explain or illustrate why it is reasonable to conclude that responding to the request may furnish a link in the chain of evidence regarding Defendants' actions and associations that could be used against them in a federal or state prosecution related to the events of September 7.

[10] This observation is true with respect to all other discovery requests below but is omitted from additional responses for the sake of brevity.

*Fifth Amendment – See* MTC Memo, p. 9 (the interrogatory "seeks information which would show where Defendants stayed in the lead up and aftermath of the trespass at issue in the case"); *see also* Exhibits E and F to MTC, p. 4 (stating that Defendants' associations, including who "assisted [them] in travels, lodging, and transportation to the site of the event(s) is clearly relevant to the conspiracy" count).

*First Amendment* – The nature of the information requested strikes at the heart of the First Amendment associational privilege, seeking compelled identification of individuals who have hosted Defendants in their residence. Further, the information requested is unnecessary to MVP's case and cumulative given the other information available to MVP.

*Other considerations* – It is unclear to Defendants whether MVP has narrowed the scope of its original request. Defendants maintain their proportionality objection to the extent MVP continues to seek information unrelated to the events of September 7 in this request.

Interrogatory No. 5/6 – Please identify the carrier, number, account number, owner and current whereabouts of any cellphone you have used or had in your possession since September 1, 2023.

*Fifth Amendment – See* MTC Memo, p. 11 (the interrogatory "has a tendency to show calls, texts, and online searches conducted in the lead up, during and immediate aftermath of the trespass"); *see also* Exhibits E and F to MTC, p. 4 ("information that may be gleaned from cell phone records is clearly relevant to the conspiracy" count).

*First Amendment* – MVP's stated effort to utilize this Interrogatory as a link in the chain necessary to access Defendants' cell phone records implicates the privacy and associational interests of both Defendants and their contacts and other associates. *See, e.g., Riley v. California*, 573 U.S. 373, 394-95, 403 (2014) (internal quotations omitted) ("[t]he sum of an individual's private life can be reconstructed" through cell phone data, which "hold for many Americans the privacies of life" and include long-term records of communications with others).

15

*Other considerations* – It is unclear to Defendants whether MVP has narrowed the scope of its original request. Defendants maintain their proportionality objection to the extent MVP continues to seek information unrelated to the events of September 7 in this request.

<u>Interrogatory No. 6/7</u> – Please identify all of your social media accounts and user names since July 1, 2023.

*Fifth Amendment* – *See* <u>MTC Memo,</u> p. 12 (making clear the interrogatory could provide information leading to discovery and authentication of posts by Defendants relating to unlawful activity); *see also* <u>Exhibit E</u> and <u>Exhibit F</u> to <u>MTC,</u> p. 7 (stating that "the information that may be gleaned from social media is clearly relevant to the conspiracy" count).

*First Amendment* – The information requested, which implicates disclosure of Defendants' personal and political associations, may be available from public sources, such as online searches for the Defendants' social media profiles.

*Other considerations* – Defendants maintain their proportionality objection to the extent MVP continues to seek information unrelated to the events of September 7 in this request (e.g., identification of social media accounts entirely unrelated to any MVP-related activities).

<u>Interrogatory No. 7/8</u> – Please identify all of your email accounts and email addresses since July 1, 2023.

*Fifth Amendment* – *See* <u>MTC Memo,</u> p. 12 ("[i]t is possible Defendants used email to communicate with others to plan and participate in the trespasses at issue in this case"); *see also* <u>Exhibit E</u> and <u>Exhibit F</u> to <u>MTC,</u> p. 7 (stating that "the information that may be gleaned from social media is clearly relevant to the conspiracy" count).

*First Amendment* – MVP's stated effort to utilize this Interrogatory as a link in the chain necessary to access Defendants' emails implicates the privacy and associational interests of both Defendants and their contacts and other associates.

*Other considerations* – Defendants maintain their proportionality objection to the extent MVP continues to seek information unrelated to the events of September 7 in this request (e.g., identification of email accounts entirely unrelated to any MVP-related activities).

Interrogatory No. 8/9 – Please state the dates, locations, and your activities at any entries that you have attended in the last 10 years.

.

*Fifth Amendment* – The potential for self-incrimination is self-evident.

Interrogatory No. 10/11 – Please identify all individuals that you are aware are associated with Appalachians Against Pipelines

*Fifth Amendment* – *See* MTC Memo, p. 14 (claiming that this request is "directly relevant . . . to show the network of conspirators involved in Defendant's trespass"); *see also* Exhibit E and Exhibit F to MTC, p. 12 ("Your knowledge of individuals associated with Appalachians Against Pipelines and similar entities who have incited, encouraged, planned, coordinated, or attended the event in question and  other events is clearly relevant to the issue of conspiracy[.]").

*First Amendment* – The nature of the information requested strikes at the heart of the First Amendment associational privilege, seeking identification and compelled disclosure of individuals for merely being "associated with" an unidentified group of people operating a Facebook page (to the extent that is, in fact, the request; *see* vagueness discussion, *infra*). *See* Section II(A), pp. 11-12 (detailing the chilling effect related to this particular request).

*Other considerations* – Defendants maintain their vagueness objection. Even if MVP has now clarified their request to pertain to "the entity operating the Appalachians Against Pipelines Facebook page" (MTC, p. 15), and even assuming that such an "entity" is definable or cognizable,

17

MVP still has not clarified what it means to be "associated with" this "entity."[11]  As set forth in

defense counsel's August 26 letter to MVP (Exhibit G to MTC) pp. 12-13:

> Does posting a supportive social media message regarding and "entry" count?  What
> about attending a demonstration in a public location to show support for a
> demonstration posted on an "Appalachians Against Pipelines" social media account?
> Or engaging in other First Amendment-protected activities supporting protest of the
> Mountain Valley Pipeline.  The "Appalachians Against Pipelines" Facebook page has
> approximately 22,000 followers at this time.  Is anyone who likes or reposts content
> from this page, or even follows the page at all, "associated with" Appalachians
> Against Pipelines"?

MVP has failed to answer any of the clarifying questions set forth above.

Interrogatory No. 11/12 – Please identify all known to you who have been involved in any entries
and identify all documents relating to their involvement.

*Fifth Amendment – See* MTC Memo, p. 16 ("The information sought lends itself to show both

Defendants['] propensity to commit similar crimes and to provide additional evidence to support

MVP's claim for conspiracy.'""); *see also* Exhibit E and Exhibit F to MTC, p. 14 ("Your knowledge of

individuals associated with events who have incited, encouraged, planned, coordinated, or attended

the event in question and   other events is clearly relevant to the issue of conspiracy[.]"").

*First Amendment* – The nature of the information requested strikes at the heart of the First

Amendment associational privilege, seeking identification and compelled disclosure of individuals

for being involved in nonviolent civil disobedience and making their involvement known to

Defendants.

*Other considerations* – Defendants maintain that the information sought is relevant to the

subject matter of the litigation rather than the claims and defenses directly at issue here.

**IV.    Requests for Production**

---

[11] To the extent MVP is seeking the identity of individuals controlling the social media account with
the moniker "Appalachians Against Pipelines[,]" Defendants have already clarified that they have no
knowledge of the identity of any such persons.

"[T]he act of producing documents . . . may have a compelled testimonial aspect" and "'the act of production' itself may implicitly communicate 'statements of fact.'" *United States. v. Hubbell,* 530 U.S. 27, 36 (2000). Accordingly, Defendants may assert the Fifth Amendment privilege in response to requests for production when production would constitute an admission that the requested documents exist, are in their possession or control, and/or are authentic. *Id. See also Doe v. United States,* 487 U.S. 201 (1988); *United States v. Doe,* 465 U.S. 605 (1984).

<u>Request for Production No. 3</u> – Please provide copies of all communications, including text messages, social media messages, group chats, or other correspondence with any person or entity concerning MVP, Appalachians Against Pipelines, or the entries described in the Complaint.

*Fifth Amendment – See* <u>MTC Memo,</u> p. 16 (the information sought "shows Defendants' propensity to commit such crimes and lends itself to additional information surrounding the September 7 entry"). The act of producing any potentially responsive documents could constitute an admission that the documents exist, are in Defendants' possession or control, and are authentic.

*First Amendment –* The nature of the information requested strikes at the heart of the First Amendment associational privilege, involving requested disclosure of all communications relating to the Mountain Valley Pipeline and years of protest activity in any way.

*Other considerations –* Defendants maintain that the information sought is overbroad to the extent it is largely relevant to the subject matter of the litigation rather than the claims and defenses directly at issue here.

<u>Request for Production No. 5</u> – Please provide copies of all social media posts you have interacted with (posted, commented on, reacted to, etc.) concerning MVP, Appalachians Against Pipelines, or other entries described in the Complaint.

Defendants incorporate by reference all relevant portions of their response to Interrogatories 6/7 above. The act of producing any potentially responsive documents could constitute an admission that the documents exist, are in Defendants' possession or control, and are authentic. Finally, notwithstanding their objection Defendant has offered disclosure of a portion of

19

this request in this Interrogatory as part of a good-faith effort to resolve all outstanding discovery disputes.

<u>Request for Production No. 8</u> – Produce all documents related to any entry in which you have participated in the past 10 years.

*Fifth Amendment* – The potential for self-incrimination is self-evident. The act of producing any potentially responsive documents could constitute an admission that the documents exist, are in Defendants' possession or control, and are authentic.

*Other considerations* – Defendants maintain that the information sought is overbroad to the extent it is largely relevant to the subject matter of the litigation rather than the claims and defenses directly at issue here.

    **V.**    **Request for Admission No. 3** – Admit you are present in some or all of the photographs attached as Exhibit A to the Complaint.

*Fifth Amendment* – The potential for self-incrimination is self-evident.

*Other considerations* – In lieu of an affirmative admission to this question, Defendants have offered to stipulate "that it may be deemed established for the purposes of this litigation that Defendant Abramoff is present in the photographs attached at pages 5, 8, and 13 of Exhibit A to the Complaint, and that Defendant Tuhus is present in the photographs attached at pages 5, 9, 10, and 12 of Exhibit A to the Complaint." *See* <u>Exhibit H</u> to <u>MTC</u>, p. 6 [PDF p. 7].

## CONCLUSION

WHEREFORE, Defendants request this Court deny MVP's Motion to Compel in its entirety. If this Court finds the written pleadings insufficient to support an outright denial of MVP's Motion, Defendants request a hearing on the Motion, as well as an opportunity to inform the Court of facts supporting their Fifth Amendment assertions via an *ex parte* proffer, an *ex parte* hearing for which the record shall be sealed, and/or leave to file a supplemental memorandum and/or affidavit *ex parte* and under seal.

20

Respectfully submitted,

**MELINDA ANN TUHUS**
**ROSE ZHENG ABRAMOFF**

By Counsel

/s/ Jonathan Sidney
Jonathan Sidney
*Pro Hac Vice*
Colorado Bar No. 52463
Ohio Bar No. 0100561
Climate Defense Project
P.O. Box 97
Forest Hill, WV
Telephone: (510) 318-1549

/s/ William V. DePaulo
William V. DePaulo, Esq. #995
860 Court Street North
Suite 300
Lewisburg, WV 25901
Phone: (304) 342-5588
Fax: (866) 850-1501

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MOUNTAIN VALLEY PIPELINE, LLC,
          Plaintiff,

v.                                    CIVIL ACTION NO 5:23-CV-00625

MELINDA ANN TUHUS, and
ROSE ZHENG ABRAMOFF
          Defendants.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of the Court, this 4th day of October, 2024, and thereby served on Counsel for the Plaintiff as follows:

Timothy M. Miller (WVSB #2564)
Matthew S. Casto (WVSB #8174)
Robert M. Stonestreet (WVSB # 9370)
Jennifer J. Hicks (WVSB # 11423)
Austin D. Rogers (WVSB #13919)
**BABST CALLAND, P.C.**
300 Summers Street, Suite 1000
Charleston, WV  25301
Telephone:  681.205.8888
Facsimile:  681.205.8814

/s/William V. DePaulo
William V. DePaulo