UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MOUNTAIN VALLEY PIPELINE, LLC,

   Plaintiff,

v.               CIVIL ACTION NO 5:23-CV-00625

MELINDA ANN TUHUS, and
ROSE ZHENG ABRAMOFF

   Defendants.

## SUR-REPLY IN OPPOSITION TO MOTION TO COMPEL

  Defendants Melinda Ann Tuhus and Rose Zheng Abramoff ("Defendants"), by counsel, hereby file this sur-reply to the Reply Brief of Plaintiff Mountain Valley Pipeline, LLC ("MVP") in support of its Motion to Compel.

### Fifth Amendment

I. *Defendants need not prove the existence of an ongoing investigation to show a realistic risk of prosecution.*

  MVP suggests in its reply brief, for the first time[1], that Defendants must put forth evidence substantiating the existence of an ongoing investigation to demonstrate a substantial and real risk of federal prosecution. *See* Reply Brief (ECF 55), p. 5.

  MVP cites no authority to support this suggestion, which runs headlong into Black Letter Law Fifth Amendment principles as reflected in the Fourth Circuit's opinion in *United States v. Sharp*, 920 F. 2d 1167 (1990). Under *Sharp*, which remains controlling authority in this jurisdiction:

> [T]he reasonableness of a claimed apprehension should simply be assumed once incriminating potential is found, unless there are genuine questions about the

---

[1] This Court may decline to consider all new arguments raised in MVP's reply brief. *See* Memorandum Opinion and Order (ECF 44), p. 5 (quoting *Moseley v. Banker*, 550 F. 3d 312, 325 n. 7 (4th Cir. 2008)) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."); *see also Huxley v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 745 n. 4 (S.D. W. Va. 2014).

> government's legal ability to prosecute. That is to say, once incriminating potential is found to exist, courts should not engage in raw speculation about whether the government will actually prosecute . . . and should only pursue that inquiry when there are real questions concerning the government's ability to do so because of legal constraints such as statutes of limitations, double jeopardy, or immunity.

*Id.* at 1171 (footnote and internal citations and quotations omitted). *Sharp* rejects any requirement that a witness invoking the Fifth Amendment privilege demonstrate a present intention by the government to prosecute. *See also Belmonte v. Lawson*, 750 F. Supp. 735, 737-39 (E.D. Va. 1990) (finding realistic possibility of federal prosecution notwithstanding affidavit from United States Attorney disclaiming intention to prosecute the witness).

MVP does not even attempt to dispute that Defendants face the possibility of prosecution under 18 U.S.C. 245(b)(1)(B) (and the possibility of corresponding conspiracy prosecution under 18 U.S.C. § 371) related to the protest at issue in this litigation and surrounding circumstances. *See* Response Brief (ECF 53), pp. 7-8. Under *Sharp*, the legal possibility of a prosecution is enough to sustain Defendants' exercise of the Fifth Amendment privilege.[2]

II. *MVP's Supplemental Authorities on the Issue of Waiver Do Not Advance Its Position.*

MVP attempts to bolster its waiver argument by citing several additional Fourth Circuit Authorities. *See* Reply Brief, p. 3 (quoting *United States v. Moxley*, 3 F. App'x 95, 96 (4th Cir. 2001); *United States v. Ready*, 460 F. 2d 1238, 1239 (4th Cir. 1972); *Lassiter v. Turner*, 423 F. 2d 897, 900 (4th

---

[2] Property destruction is not an element of 18 U.S.C. 245(b)(1)(B). Given MVP's failure to address the possibility of incrimination on this offense, this Court need not reach the question of whether Defendants are subject to other state or federal charges pertaining to property destruction. *See* Response Brief, pp. 8-9. But if it does, to the extent MVP intended to argue that Defendants face no credible risk of such because they have argued that the Complaint is deficient for failing to allege property damage, *see* Reply Brief, p. 5 (citing Supplemental Memorandum of law in Support of Motion to Dismiss (ECF 39-1), pp. 5-8)), MVP's argument fails. Notwithstanding the pleading deficiencies in MVP's Complaint with respect to property damage, outside the four corners of the Complaint, MVP repeatedly and continually suggests Defendants were part of a conspiracy that resulted in property damage. *See* Reply Brief, p. 7 ("Did Ms. Abramoff cut the fence or did others do so?"); p. 9 ("Defendants had to cut a fence with barbed wire"); Response Brief, p. 8.

Cir. 1970)). All of these authorities simply include a cursory citation to *McCarty v. United States*, 394 U.S. 459 (1969) and add nothing of substance to MVP's Fifth Amendment analysis.

In reply, MVP also cites *Marfork Coal Co., Inc., v. Smith*, 74 F.R.D. 193, 207 (S.D. W. Va. 2011) for the proposition that Defendants "have waived their Fifth Amendment right against self-incrimination respecting the relevant facts and circumstances underlying" the Trespass charges to which they pleaded guilty. Reply Brief, pp. 1-2. On this point, the *Marfork* opinion relied solely on *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). As discussed at the October 10 hearing, Defendants respectfully suggest that the better reading of *Boykin* and related authorities contemplates a far more limited waiver. See Response Brief, pp. 4-6. But regardless of exactly how *Boykin* is interpreted, even MVP itself acknowledges that after a guilty plea, "[t]he Fifth Amendment is retained . . . for those claims that have not been disposed of." Reply Brief, p. 2. Judge VanDervort permitted the *Marofrk* defendants to assert the Fifth Amendment to questions related to facts and circumstances incidental to the trespass charge to which they pleaded guilty – i.e., "questions respecting others who assisted or participated with them" in the trespass – given the possibility of "other charges which could be lodged against them." *Marfork*, 74 F.R.D. at 207. This Court should do the same here.

## First Amendment

I. *Internet posts about the events of September 7 do not extinguish Defendants' First Amendment privilege.*

MVP argues that "Defendants posted online admissions and photos of their involvement in the September 7, 2023 incident and cannot realistically now claim discovery regarding same would chill their First Amendment rights of association." Reply Brief, p. 6. MVP misapprehends the nature of the injury at issue: the chilling effect to First Amendment-protected activity flowing from compelled disclosure of a witness' personal and political associates. See *Marfork*, 74 F.R.D. at 204-06; Response Brief, pp. 11-12. Notably, the plaintiff in *Marfork* made a strikingly similar argument, which Judge VanDervort wisely rejected. See 74 F.R.D. at 200 (outlining the coal company's

3

argument that the defendant was not entitled to "claim any First Amendment right of association privilege when information on the internet established that she was a member [of an environmental group] and was acting as a member when she trespassed upon Plaintiff's property").

II.  *MVP does not need the requested discovery to demonstrate intent or seek punitive damages.*

In its Reply Brief at pp. 7-8, MVP argues that "[e]vidence of participation by others in planning an event to stop and interfere [with] the project goes to establishing intent" and therefore is needed to make its claim for punitive damages. But MVP has refused to partially resolve the disputed discovery requests with a "stipulat[ion] to the authenticity, authorship, and admissibility" of two posts, purportedly attributable to Ms. Tuhus and Dr. Abramoff, which would provide MVP with more than ample evidence of intent. *See* Exhibit A (October 16–October 18 email exchange between counsel); Exhibit B ("Anatomy of a Crime" post, purportedly authored by Ms. Tuhus, to which Defendants offered to stipulate); Exhibit C (social media posts, purportedly authored by Dr. Abramoff, to which Defendants offered to stipulate).[3]

MVP rejects Defendants' proposed stipulations because it claims to "need" Defendants' testimony. *See* Exhibit A, p. 1. The reality is that MVP *wants* Defendants' testimony, and is declining the offer of reasonable stipulations to avoid undermining its claim that intrusive discovery is essential to its case. *See id.* (wherein defense counsel again reiterated their longstanding "invitations for MVP to propose additional stipulations regarding matters that would narrow the areas of factual dispute and moot the need for disputed discovery" – again, to no avail). Moreover,

---

[3] Exhibit B states, in part: "We four grannies deployed before dawn on a road near the Mountain Valley pipeline right-of-way across the Greenbrier River, each with one foot inside a concrete barrel, sitting in our famous rocking chairs, holding a banner that said, Rocking Chair Rebellion. . . . Another two women locked down to the drill that was preparing to bore under the Greenbrier."

Exhibit C states, in part: "Yesterday I stopped work on the Mountain Valley Pipeline.. I locked to the drill, 79-year-old Marty Zinn locked to part of the track . . ., & four others were in foot locks blocking the entrance."

4

even if MVP wishes to refuse reasonable stipulations, it can still seek adverse inferences as to the Defendants' invocation of their Fifth Amendment privilege to support its case for intent, subject to application of the Federal Rules of Evidence in the Court's wise discretion. *See, e.g., U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 Supp. 2d 628 (E.D. Va. 2006).

Really, this case is as nearly on all fours with *Marfork* as any this Court might imagine. Defendants are "basically willing" to stipulate that they acted intentionally and in concert with others – albeit in a form designed to protect their Fifth Amendment rights while narrowing the issues of factual dispute and streamlining MVP's ability to make its case. *See Marfork*, 274 F.R.D. at 204. MVP therefore "does not need the information about [ ] other persons to prove its claims against Defendants." *Id.*; *see also Blankenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2020 WL 5308515, *3 (S.D. W. Va. 2020) ("if the party asserting the [First Amendment] privilege makes a *prima facie* showing, then the burden is largely on the party seeking disclosure to prove that the information sought is of crucial relevance"). In conducting the First Amendment balancing test analysis, this Court should account for MVP's failure to avail itself of alternative means to develop its case that are less intrusive than the compelled disclosure of Defendants' personal and political associations.

III. *MVP does not need the requested discovery to rebut the credibility of Defendants.*

MVP anticipates that Defendants will argue at trial that they were morally justified in their actions and that they "should not be held accountable because MVP is a big corporation." Reply Brief, p. 8. Defendants need not respond to the substance of MVP's new allegations here, including the demeaning characterization of Defendants as "pawns" who are "being used[.]" If MVP believes Defendants will present irrelevant or unfairly prejudicial arguments to a jury, a *motion in limine* (following consultation with the defense as directed by the Court's pretrial order) is one

appropriate mechanism to address such concerns.[4] MVP may also seek adverse inferences against Defendants with respect to any discovery requests to which they elect to assert their Fifth Amendment privilege. *See, e.g., Custer Battles*, 415 Supp. 2d 628.

Respectfully submitted,

**MELINDA ANN TUHUS**
**ROSE ZHENG ABRAMOFF**

By Counsel

/s/ Jonathan Sidney
Jonathan Sidney
*Pro Hac Vice*
Colorado Bar No. 52463
Ohio Bar No. 0100561
Climate Defense Project
P.O. Box 97
Forest Hill, WV
Email: jsidney@climatedefenseproject.org
Telephone: (510) 318-1549

/s/ William V. DePaulo
William V. DePaulo, Esq. #995
860 Court Street North
Suite 300
Lewisburg, WV 25901
Phone: (304) 342-5588
Fax: (866) 850-1501
William.depaulo@gmail.com

---

[4] To the extent MVP believes that its extensive history of environmentally harmful practices is irrelevant to this litigation, *see, e.g., Sierra Club v. West Virginia Department Protection*, 64 F. 4th 487, 494 (4th Cir. 2023), it may move to exclude evidence of such *in limine*. In any event, it is unclear why MVP would need information about Defendants' personal and political associates in order to rebut allegations of environmental harm caused by its pipeline project.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

MOUNTAIN VALLEY PIPELINE, LLC,
    Plaintiff,
v.                                                  CIVIL ACTION NO 5:23-CV-00625

MELINDA ANN TUHUS, and
ROSE ZHENG ABRAMOFF
    Defendants.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of the Court, this 21th day of October, 2024, and thereby served on Counsel for the Plaintiff as follows:

Timothy M. Miller (WVSB #2564)
Matthew S. Casto (WVSB #8174)
Robert M. Stonestreet (WVSB # 9370)
Jennifer J. Hicks (WVSB # 11423)
Austin D. Rogers (WVSB #13919)
**BABST CALLAND, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Telephone: 681.205.8888
Facsimile: 681.205.8814

/s/William V. DePaulo
William V. DePaulo

7
